# EXHIBIT A

THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| **JEAN WILLIAMS,** | ) | |
| | ) | |
| **Plaintiff** | ) | Civil Action No. 3:16-cv-30179 |
| | ) | |
| **v.** | ) | |
| | ) | |
| **CITY OF SPRINGFIELD DEPARTMENT OF** | ) | |
| **PUBLIC WORKS,** | ) | |
| | ) | |
| | ) | |
| **Defendant** | ) | |
| | ) | |

### AFFIDAVIT OF VINCENT DESANTIS, III

I, Vincent DeSantis, III, on oath, hereby state:

1.  This affidavit was authored in connection to the United States District Court, Civil Action No.: 3:16-30179.

2.  I, Vincent DeSantis, III, state that I am employed as the City of Springfield Deputy Director of Operations & Maintenance of the Department of Public Works ("DPW") and have been since October of 2013. My duties and responsibilities as Deputy Director of the DPW include, but are not limited to: assisting in planning, administering, directing and coordinating the comprehensive and diversified operations, functions, activities and services of all divisions of the department; which include, but are not limited to: trash pickup, civil engineering, paving and maintenance of City streets, sidewalks, highways, bridges, and traffic signals. In the snow season, I am responsible for directing and supervising the plowing and removal of snow program and the sanding and salting of streets.

1

3.  I was hired by the Springfield DPW in 1985 as a skilled laborer. I later obtained my
    Motor Equipment Operator (MEO). I also obtained a commercial driver's license (CDL)
    and I plowed snow for the City of Springfield. In 1991, I was promoted to the position of
    streets and engineering foreman. In that role, I worked in some capacity in all aspects of
    the DPW, including snow removal operations, full depth construction of roads from
    sewers up, paving, construction and sweeper program.

4.  As part of the snow removal program, the City of Springfield Department of Public
    Works utilizes snow inspectors, which are an integral feature of snow removal and
    plowing. The function of a snow inspector is to assess the roads and coordinate
    conditions conducive to effective plowing, which includes ensuring the roads are safe and
    clear of cars and passable as soon as possible for any emergency vehicles (i.e. police, fire,
    ambulance). Snow inspectors are called to Tapley Street, Springfield, Massachusetts a
    half hour before the plows and trucks are deployed. If an emergency exists, snow
    inspectors manage the remediation of the emergency situation. Snow inspectors
    coordinate on an on-going basis with police, private citizens, plow drivers and DPW
    employees to ensure effective and efficient removal of snow and ice from the city streets.
    Snow inspectors assign city equipment and contracted plows to routes, track and report
    progress of assigned equipment and contracted plows, log the start and end time of plow
    drivers, ensure contracted plows stay on their route, and inspect snow routes for proper
    removal of snow from city streets. Snow inspectors often diffuse difficult situations with
    individuals frustrated and angry about snow removal activities, such as the removal or
    towing of cars. Snow inspectors typically work until the snow is cleared or 16 hours,
    whichever first occurs. Snow inspectors call the plows and trucks to first plow the main

arteries of the City streets, before plowing the side streets.

5.  There are two tiers of snow inspectors: primary snow inspectors and alternate or back-up snow inspectors. Each primary snow inspector is assigned to a specific route. In a winter storm, I make the decision to plow the streets by notifying the information technology (IT) department to send out an automated telephone call to all primary snow inspectors. In the event a primary snow inspector is not available, I or Assistant Deputy Director Steve Beem calls a back-up snow inspector to fulfill the snow route. Primary snow inspectors typically do not work for more than 16 hours in one day. If plowing operations last longer than 16 hours, back-up snow inspectors are required to continue working the storm.

6.  In snow season 2012-2013 and 2013-2014 the posting of the position of snow inspector was advertised and individuals could apply to the program. There was no guarantee that the snow inspector program would continue from year to year and individuals interested in working as snow inspectors would be chosen each year as a snow inspector. Snow inspectors were paid hourly and did not receive benefits. Snow inspection is not guaranteed work; whether an individual may be called in to inspect is reliant on winter weather conditions that require plowing.

7.  During the 1990s, the City was divided into 12 routes with a primary snow inspector and back-up snow inspector for each route. To become a primary inspector at this time, a DPW employee first had to be promoted to foreman and then had to train as a back-up inspector for 2-4 snow seasons. Primary snow inspector positions only became available when a foreman retired or left the DPW.

8.  In 2001, I assumed a position of Deputy Director of Operations for the West Springfield

3

DPW, where I stayed until 2013. While in that position, I restructured the snow inspector

program in West Springfield. I divided West Springfield into five snow routes and

assigned a primary inspector and a backup inspector for each route.

9. In October 2013, I became the Deputy Director of the Springfield DPW.

10. When I returned in 2013, the City of Springfield was divided into 20 routes. There were a

number of individuals whom, in my opinion, lacked adequate training and qualifications

to be snow inspector. When I first became Deputy Director of the DPW, trainees would

train with a snow inspector during a storm, in the hopes that the trainee would be able to

go out alone on the fourth time. However, trainees did not always acquire the adequate

skills to go out on their own after three snow storms. Trainees spent a minimum of three

storms with an experienced snow inspector.

11. During snow season 2013-2014, George Laroe and I had a conversation regarding the

Plaintiff's snow inspection capability. Mr. Laroe indicated that the Plaintiff was not doing

what she needed to and did not care much about what was happening. (*See Deposition of

Vincent DeSantis, III, p. 136*).

12. Starting in 2015, I began to remove snow inspectors from the list who lacked sufficient

training. With an average of six snow storms a year that required snow inspection and

subsequent plowing, I did not have the ability to adequately train the individuals I

removed from the list. Specifically, these individuals were not appropriate for the snow

inspector position because they were not familiar with: the snow removal process,

Springfield streets, dealing with hostile individuals in the public and dealing with adverse

vendors.

13. I based my decisions on who to remove by how the snow inspector: handled him or

herself when he or she was out inspecting, conveyed information regarding plows and overall quality of the snow inspection.

14. The snow inspector lists I inherited only listed two women snow inspectors: Sheila Delgado and Jean Williams.

15. In snow season 2013-2014, I retained all the primary inspectors from the season before I assumed the Deputy Director role. I chose to assess and evaluate that season to determine how the snow inspection program operated.

16. In snow season 2014-2015, I began to implement changes to the snow removal operation. Initially, I changed how the snow control room operated from and established controlled progress reports.

17. The snow inspector hiring program was disbanded in snow season 2014-2015. I ceased job postings for snow inspectors. I sought to bring back snow inspectors with a base knowledge of snow removal; people who knew the roads, dealt with vendors and contractors, and could effectively communicate to deal with complaints. I changed the job description of foremen to encompass snow inspection as a facet of their job.

18. After the snow inspection hiring program was disbanded, the criteria for performing the duties of snow inspection were clarified. The following individuals were no longer performing the duties of snow inspection because they no longer fit the criteria:

    a. Arroyo, Ruben

    b. Astacio, Luis

    c. Bernard, Bob

    d. Bergdoll, Kevin

    e. Brown, Kris E.

f.  Brush, Ed

g.  Cass, Mike

h.  Charizio, Darren

i.  Cirelli, John

j.  Collins, Eamon

k.  Connors, Francis

l.  Cotter, David

m.  Day, Robert

n.  Dearing, B.

o.  Delgado, Sheila

p.  Donelon, Scott

q.  Dromey, Philip

r.  Hebert, Mark E.

s.  Hotling, Kerry

t.  LaRoe, George

u.  LaRosa, Rudolph R.

v.  LaSanta, Angel

w.  Mann, Jason

x.  McCall, Thomas

y.  McNulty, Michael

z.  Mercure, Ed

aa.  Pellerin, Al

bb.  Pianka, Bill

cc.  Pickney, Wes

dd.  Prout, R.

ee.  Rooney, George

ff.  Shumway, Peter

gg.  Sumares, Charles

hh.  Williams, Jean

19. During snow season 2017-2018, in another change I made in the program, I reduced the

number of snow inspectors deployed during a shift from 20 to 15 snow inspectors.

SIGNED under the penalties of perjury this _3ʳᵈ_ day of _August_, 2018.

Vincent DeSantis, III,
Director of the Department of Public Works, Springfield